IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENDELL CHARLES ALEXANDER, SR., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 15-6981 (JBS-AMD) |
| v. | |
| ROBERT ORTIZ, | **OPINION** |
| Defendant. | |

APPEARANCES:

Sharon King, Esq.[1]
King & King, LLC
231 South Broad Street
Woodbury, New Jersey 08096
Attorneys for Plaintiff, Kendall Charles Alexander, Sr.

Craig Carpenito, United States Attorney
David Bober, Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
402 East State Street
Room 430
Trenton, New Jersey 08608
Attorneys for Defendant, Robert Ortiz

**SIMANDLE, District Judge:**

---

[1] The Court acknowledges and appreciates the advocacy of Sharon King, Esq., and King & King, LLC, who accepted appointment as pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) and this Court's Plan for Appointment of Attorneys in Pro Se Civil Actions, see App. H of the Local Civil Rules of the District of New Jersey.

## I. INTRODUCTION

Kendall Charles Alexander, Sr., a federal prisoner formerly confined at FCI Fort Dix, New Jersey, filed an amended complaint alleging racial discrimination and retaliation by his prison workplace supervisor, Robert Ortiz, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Amended Complaint, Docket Entry 30. On September 29, 2017, Defendant Ortiz filed a motion to dismiss the amended complaint in light of the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Motion to Dismiss, Docket Entry 55. The Court appointed counsel for Plaintiff pursuant to 28 U.S.C. § 1915(e)(1), received supplemental briefing, and conducted oral argument on January 29, 2018.

After considering the submissions and arguments of the parties, the Court will not extend *Bivens* to a First Amendment retaliation or Fifth Amendment Equal Protection claim in the prison workplace context. The motion to dismiss is granted.

## II. BACKGROUND

On September 21, 2015, Plaintiff filed a civil rights action against Robert Ortiz, the United States, the Federal Bureau of Prisons ("BOP"), and UNICOR[2] alleging discrimination in

---

[2] UNICOR is the trade name of Federal Prison Industries and is a wholly-owned Government corporation.

his prison employment at FCI Fort Dix. Complaint, Docket Entry 1.

According to the complaint, Plaintiff began working with UNICOR in August 2013 as a mechanic with prior experience from a different institution. *Id.* ¶ 6. Plaintiff alleged that Ortiz, the UNICOR manager, passed him over for promotion, overlooked Plaintiff's benefits, longevity, and pay in spite of Plaintiff's experience, and denied Plaintiff the ability to work overtime after he filed grievances about the alleged racial discrimination. *Id.* Plaintiff further alleged that Caucasian mechanics were promoted before him even though they were hired after him. Plaintiff also stated none of the Caucasian mechanics had to wait as long as Plaintiff did before receiving a promotion. *Id.* He asked the Court to reinstate his longevity credit and award him back pay retroactive to the date he should have been promoted. He also requested back pay for overtime opportunities he was unlawfully denied. *Id.* ¶ 7.

After granting Plaintiff's *in forma pauperis* application, the Court screened the complaint under 28 U.S.C. § 1915. It dismissed the United States, the BOP, and UNICOR from the case as the United States is immune from suit and the Supreme Court declined to extend *Bivens* liability to federal agencies and employers. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001)("The [federal] prisoner may not bring a *Bivens* claim

against the officer's employer, the United States, or the BOP."); *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994) (declining to extend *Bivens* liability to federal agencies). Opinion and Order of Dec. 2, 2015, Docket Entries 3 & 4. It dismissed the racial discrimination claim without prejudice, but permitted a retaliation claim to proceed against Ortiz based on Plaintiff's allegations that Ortiz excluded him from working overtime after Plaintiff filed grievances about the alleged discrimination. Complaint ¶ 6. The Court ordered summonses to issue. Ortiz was served and later filed his answer on April 25, 2016. Docket Entry 18.

On June 8, 2016, Plaintiff moved to amend his complaint to address the deficiencies in his Equal Protection claim that the Court had noted in its screening opinion and order. Motion to Amend, Docket Entry 24. Ortiz indicated that he had no objection to the motion to amend. Response, Docket Entry 25. He requested permission to file an answer to the amended complaint within ten days of the amended complaint's filing, as well as an additional two weeks to file a motion for summary judgment. *Id.* Ortiz further indicated he reserved the right to file a venue transfer motion and asked that discovery be stayed pending resolution of the summary judgment motion. *Id.* After reviewing the amended complaint under Federal Rule of Civil Procedure 15(a), the Court granted the motion to amend. Opinion and Order of Aug. 10, 2016,

Docket Entries 28 & 29. Ortiz answered the amended complaint seven days later, Docket Entry 31.

The case continued in discovery and motion practice before Magistrate Judge Donio, culminating in Ortiz's motion for summary judgment filed on February 10, 2017. Docket Entry 38. Plaintiff, still proceeding pro se at this point in time, filed opposition to the motion. Docket Entry 39. On June 19, 2017, the Supreme Court issued its decision in *Ziglar*. Ortiz filed a letter requesting that the Court postpone ruling on the motion for summary judgment as the US Attorney's Office was conducting an office-wide review of pending *Bivens* cases in consultation with the Department of Justice. Letter, Docket Entry 41.

On August 14, 2017, Ortiz supplemented his summary judgment motion with an argument based on *Ziglar*. Ortiz argued that Plaintiff's retaliation and Equal Protection claims are "new contexts" under *Bivens*, meaning the federal courts should not extend *Bivens* liability to those claims in the absence of specific congressional action. Supplemental Letter, Docket Entry 44. As the issue was one of first impression, the Court administratively terminated the summary judgment motion and appointed counsel for Plaintiff for the limited purpose of addressing the *Ziglar* issue. Pro Bono Order, Docket Entry 45; Administrative Termination Order, Docket Entry 47. Appointed

counsel entered an appearance on September 1, 2017. Ortiz subsequently filed this motion to dismiss.

The Court conducted oral argument on January 29, 2018. At the conclusion of argument, the Court directed the parties to submit supplemental briefing on an issue that arose during argument: whether the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126(c), provided a remedy for claims of discrimination in the prison workplace. Ortiz submitted his response on February 13, 2018, and Plaintiff submitted his on February 20, 2018. Ortiz Supplemental Brief, Docket Entry 63; Plaintiff Supplemental Brief, Docket Entry 64.

The matter is now ripe for disposition.

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must
"tak[e] note of the elements [the] plaintiff must plead to state
a claim. Second, it should identify allegations that, because
they are no more than conclusions, are not entitled to the
assumption of truth. Finally, [w]hen there are well-pleaded
factual allegations, [the] court should assume their veracity
and then determine whether they plausibly give rise to an
entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d
780, 787 (3d Cir. 2016) (alterations in original) (internal
citations and quotation marks omitted). "[A] complaint's
allegations of historical fact continue to enjoy a highly
favorable standard of review at the motion-to-dismiss stage of
proceedings." *Id.* at 790.

**IV. DISCUSSION**

Ortiz moves for dismissal of Plaintiff's amended complaint
on the basis that there is no *Bivens* remedy for his retaliation
and Equal Protection claims in light of the Supreme Court's
*Ziglar* decision. He asserts the claims are new contexts under
*Bivens* and that special factors counsel against extending the
*Bivens* remedy. Alternatively, Ortiz asserts he is entitled to
qualified immunity.

Section 1983 of Title 42 created a remedy for monetary damages for those injured by persons acting under color of state law, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in *Bivens* based on a violation of the Fourth Amendment by federal officers. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971)("The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts."). The Court extended the *Bivens* remedy twice more: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding prisoner's estate had *Bivens* remedy against federal jailers for failure to treat his asthma). "These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages

remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

In *Ziglar*, the Supreme Court confronted *Bivens* claims from detainees held on immigration violations in the Metropolitan Detention Center ("MDC") in Brooklyn, New York, after the September 11, 2001 terrorist attacks.[3] The detainees brought suit against former Attorney General John Ashcroft, former FBI Director Robert Mueller, and former Immigration and Naturalization Service Commissioner James Ziglar (referred to by the Supreme Court as the "Executive Officials") challenging the official policies resulting in plaintiffs' detention. They also filed suit against MDC's warden, Dennis Hasty, and associate warden, James Sherman (referred to by the Supreme Court as the "Wardens") for the conditions of confinement they endured while in the MDC. *Id.* at 1852–53.

The detainees filed suit under *Bivens* alleging violations of substantive due process component of the Fifth Amendment, the equal protection component of the Fifth Amendment, and the

---

[3] "[M]ore than 700 individuals were arrested and detained on immigration charges. If the FBI designated an alien as not being 'of interest' to the investigation, then he or she was processed according to normal procedures. . . . If, however, the FBI designated an alien as 'of interest' to the investigation, or if it had doubts about the proper designation in a particular case, the alien was detained subject to a 'hold-until-cleared policy.' The aliens were held without bail." *Ziglar*, 137 S. Ct. at 1852.

Fourth Amendment. *Id.* at 1853-54.[4] The detainees also alleged
Warden Hasty allowed MDC guards to abuse them. *Id.* at 1854. The
main issue pending before the Supreme Court was whether a remedy
for damages existed under *Bivens* against the Executive Officials
and Wardens. *Id.*

The Supreme Court in *Ziglar* concluded "that expanding the
*Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at
1857. It held that federal courts should exercise caution before
extending the remedy to claims that are meaningfully different
than "the three *Bivens* claims the Court has approved in the
past: a claim against FBI agents for handcuffing a man in his
own home without a warrant; a claim against a Congressman for
firing his female secretary; and a claim against prison
officials for failure to treat an inmate's asthma." *Id.* at 1860
(citing *Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446
U.S. 14). The Court concluded that the detention policy claims
against the Executive Officials were not properly brought
pursuant to *Bivens* "as a *Bivens* action is not a proper vehicle
for altering an entity's policy." *Id.* at 1860 (internal
quotation marks omitted). The Court remanded the abuse claim
back to the Second Circuit to consider whether it was

---

[4] There was also a claim under 42 U.S.C. § 1985(3) for conspiring
to violate the detainees' equal protection rights, but this
claim is not relevant to the Court's discussion of the *Bivens*
remedy.

appropriate for the courts to extend *Bivens* in light of the identified "special factors." *Id.* at 1869.

*Ziglar* created a funnel through which plaintiffs alleging constitutional violations by federal officials must pass. First, federal courts must determine whether the cause of action presents a "new context" for *Bivens* cases. If it does, courts must then determine whether alternative remedies exist. Finally and most critically, courts must determine whether there are special factors counselling against extending the *Bivens* remedy to the new cause of action.

**A.    New Context: Is the Claim "Meaningfully Different"?**

As announced in *Ziglar,* "[t]he proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.* at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Plaintiff Alexander, an African American federal prisoner, alleges Ortiz, the UNICOR factory manager, discriminated against him on the basis of his race by promoting less qualified Caucasian and Hispanic workers before him, in violation of the Fifth Amendment. Plaintiff further alleges Ortiz retaliated against him by denying Plaintiff opportunities to work overtime shifts after Plaintiff filed grievances about the discrimination, in violation of the First Amendment.

None of the three prior *Bivens* cases addressed federal prisoners in the prison employment context. *Carlson* extended the remedy to Eighth Amendment denial of medical care claims against prison officials. 446 U.S. 14 (1980). Although Plaintiff's claims arise in the prison context, they are under the Fifth and First Amendments and concern his job assignment, not his medical care. *Davis*, while addressing a Fifth Amendment discrimination claim, concerns a congressional employee. Plaintiff's situation is vastly different from the plaintiff in *Davis* as he is a federal prisoner and is therefore not an "employee" within the meaning of federal employment protection statutes. *See, e.g., Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam) ("It is well established that a prisoner is not an employee under the Fair Labor Standards Act (FLSA), because the relationship is not one of employment, but arises out of the prisoner's status as an inmate.")(citing E.E.O.C. Dec. No. 86-7,

*3, 40 Fair Empl. Prac. Cas. (BNA) 1892 (1986)). Plaintiff's
Fifth Amendment claim is therefore a new *Bivens* context because
it is meaningfully different from *Bivens*, *Davis*, and *Carlson*.

The Supreme Court has "never held that *Bivens* extends to
First Amendment claims" *Reichle v. Howards*, 566 U.S. 658, 663
n.4 (2012) (granting qualified immunity to Secret Service agents
on retaliatory arrest claim). *See also Bush v. Lucas*, 462 U.S.
367, 368 (1983) (refusing to extend *Bivens* to a First Amendment
speech claim involving federal employment). It has "several
times assumed without deciding that *Bivens* extends to First
Amendment claims." *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014)
(holding Secret Service agents were entitled to qualified
immunity on viewpoint discrimination claim); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 675 (2009) ("[W]e assume, without
deciding, that respondent's First Amendment claim is actionable
under *Bivens*.").

Plaintiff relies on a series of pre-*Ziglar* Third Circuit
precedent holding that *Bivens* extends to First Amendment claims.
*See Milhouse v. Carlson*, 652 F.2d 371 (3d Cir. 1981) (holding
*Bivens* remedy existed for prisoner's right of access to the
courts claim); *Paton v. La Prade*, 524 F.2d 862 (3d Cir. 1975)
(holding *Bivens* remedy existed for First Amendment for high
school student whose name and address on mail to the Socialist
Workers Party was recorded by the FBI). *See also Wilkerson v.*

*Samuels*, 524 F. App'x 776, 777–79 (3d Cir. 2013) (per curiam) (reversing district court's dismissal of prisoner's *Bivens* retaliation claim against UNICOR supervisor). However, the Third Circuit recently reevaluated its First Amendment approach post-*Ziglar* in a suit alleging retaliatory prosecution by a Transportation Security Administration ("TSA") officer. *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017).

The plaintiff in *Vanderklok* alleged the TSA officer "called the Philadelphia police and falsely reported that Vanderklok had threatened to bring a bomb to the airport" because he had "stated an intent to file a complaint against [the officer]." *Id.* at 193. Vanderklok was acquitted of all criminal charges at trial. *Id.* After reviewing its pre-*Ziglar* First Amendment *Bivens* jurisprudence, the Third Circuit acknowledged that "[s]ince our decisions in *Paton* and *Milhouse* permitting *Bivens* actions in certain First Amendment contexts, the Supreme Court has plainly counseled against creating new *Bivens* causes of action." *Id.* at 199. "Our past pronouncements are thus not controlling in the specific circumstances now at issue. It is not enough to argue . . . that First Amendment retaliation claims have been permitted under *Bivens* before." *Id.* at 199.

Pursuant to *Vanderklok*, Plaintiff cannot rely on the fact that courts have permitted *Bivens* First Amendment retaliation actions to proceed in the past. *See id. See also Gonzalez v.*

*Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) ("As an initial matter, even though the Supreme Court has recognized causes of action in *Bivens* under the Fourth Amendment, in *Davis* under the Fifth Amendment, and in *Carlson* under the Eighth Amendment, that does not mean that any cause of action may lie under those Amendments simply by virtue of these Supreme Court cases."). Courts must examine each raised claim anew on its own particular set of facts. *Vanderklok*, 868 F.3d at 199–200.

None of the Supreme Court's prior *Bivens* cases concern a First Amendment retaliation claim brought against a federal prison workplace supervisor. The Court therefore concludes that Plaintiff's First Amendment retaliation claim, in the context of a prison job assignment, is a new *Bivens* context.

### B. Alternative Remedy

The next question the Court must ask is "'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 200 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). *See also Butts v. Martin*, 877 F.3d 571, 587–88 (5th Cir. 2017). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S. Ct. at 1858.

The Court finds an alternative remedy is not available to Plaintiff. An injunction prospectively requiring the warden to comply with Federal Prison Industries' non-discrimination policy[5] would not compensate Plaintiff for lost wages, and his claims do not lie within the "core of habeas" such that a habeas corpus petition would be appropriate, *see Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973).

Plaintiff may not bring his claim for damages under Title VII of the Civil Rights Act of 1964, FLSA, Age Discrimination in Employment Act (ADEA), Equal Pay Act (EPA), or Rehabilitation Act as he is not an "employee" within the meaning of those statutes. *See Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) ("We conclude that plaintiff is not an 'employee' under either Title VII or the ADEA because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee."). *See also* 1 Charles R. Richey, Manual on Employment Discrimination, § 3:26 (2018).

---

[5] *See* 28 C.F.R. § 345.35(a) ("[Federal Prison Industries] does not discriminate on the bases of race, color, religion, ethnic origin, age, or disability."). *See also* BOP Program Statement 8120.03 at 2 (Feb. 23, 2017) ("[Federal Prison Industries] will not discriminate on the bases of race, color, religion, ethnic origin, age, or disability.").

Plaintiff also may not rely on the Federal Tort Claims Act ("FTCA") to sue the United States instead of Ortiz because federal constitutional violations, such as those claimed by Plaintiff, are not cognizable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (holding 28 U.S.C. § 1346(b) does not provide a cause of action for constitutional torts).

The Court also concludes IACA does not provide a remedy for Plaintiff in this particular situation. IACA states in relevant part that UNICOR "is authorized to employ the fund . . . in paying, under rules and regulations promulgated by the Attorney General . . . compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). The regulations then permit compensation to be paid "to former federal inmates or their dependents for physical impairment or death resultant from injuries sustained while performing work assignments" and for lost-time wages. 28 C.F.R. § 301.101(a)-(b). "Work-related injury" is defined by the regulation as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a).

The cases applying IACA have limited it to physical injuries and illnesses. The IACA precludes relief under the FTCA

for "work-related" injuries, *see United States v. Demko*, 385 U.S. 382 (1966), and has been analogized to civilian worker's compensation laws, *see Thompson v. U.S. Fed. Prison Indus.*, 492 F.2d 1082, 1083 (5th Cir. 1974). *See also* H.R. REP. NO. 87-534, at 1-2 (1961) ("This compensation is specified to be no greater than that provided in the Federal Employees' Compensation Act."). This supports the inference that Congress did not intend IACA to provide a remedy for constitutional violations such as those alleged by Plaintiff. *See also Cooleen v. Lamanna*, 248 F. App'x 357, 362 & n.5 (3d Cir. 2007) (holding IACA does not bar *Bivens* denial of medical care claim); *Bagola v. Kindt*, 131 F.3d 632 (7th Cir. 1997) (holding § 4126 did not provide procedural safeguards protecting Eighth Amendment rights and permitting *Bivens* claim).

The lack of an alternative remedy for damages does not necessarily mean the Court should extend *Bivens*, however. The Court must still "'make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).

**C.   Special Factors**

Most critically, *Ziglar* requires courts to consider whether there are "special factors counselling hesitation" before extending a *Bivens* remedy to a new context.

"The Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The Supreme Court did not define the phrase "special factors counselling hesitation." "The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. A "special factor counselling hesitation" is something that "cause[s] a court to hesitate before answering that question in the affirmative." *Id.* at 1858. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." *Id.* at 1857 (quoting *Bush*, 462 U.S. at 380).

The Court finds that the prison workplace context is a special factor precluding extending the *Bivens* remedy. The Supreme Court has previously stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. . . . Running a prison is an

inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (internal citations and quotation marks omitted). "Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Id.* at 85. *See also Ziglar*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis.").

UNICOR is a legislative creation designed to carry out the work requirement for federal prisoners, subject to security, disciplinary, medical, and rehabilitation exceptions. 18 U.S.C. §§ 4121-4129. *See also* 28 C.F.R. § 345.10 ("It is the policy of the Bureau of Prisons to provide work to all inmates (including inmates with a disability who, with or without reasonable accommodations, can perform the essential tasks of the work assignment) confined in a federal institution."). "There is no statutory requirement that inmates be paid for work in an industrial assignment." 28 C.F.R. § 345.10. Congress has provided for discretionary compensation in 18 U.S.C. § 4126 and has delegated authority to the Attorney General to promulgate

rules and regulations to implement those policies. *See* 18 U.S.C.
§ 4126(c)(4); 28 C.F.R. § 345.10. Congress specifically created
a mechanism by which prisoners could be compensated for
workplace injuries and illnesses, but did not extend that remedy
to other forms of workplace discrimination or constitutional
violations. Had Congress intended to include a monetary remedy
against federal officers or employees for those sorts of claims
in the UNICOR implementing statutes, it would have so stated.
*See Ziglar*, 137 S. Ct. at 1856("When Congress enacts a statute,
there are specific procedures and times for considering its
terms and the proper means for its enforcement. It is logical,
then, to assume that Congress will be explicit if it intends to
create a private cause of action.").

Because the prison workplace is an area that is heavily
regulated by the legislative and executive branches, and because
it is not regarded as an employer/employee relationship, the
Court finds that it should be left to those branches to
determine whether an action for damages for claims of racial
discrimination and retaliation exists. Given the constraints of
Ziglar, the Court will not extend *Bivens* and will grant the
motion to dismiss for failure to state a claim.[6]

---

[6] Because the Court is granting the motion on the merits, it does
not reach the qualified immunity argument.

## V.  CONCLUSION

For the reasons stated above, the motion to dismiss the amended complaint is granted.

An accompanying Order will be entered.


**March 20, 2018**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge